UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DANIEL BEECH** | * | **CIVIL ACTION NO. 20-1178** |
| | * | |
| | * | **SECTION "I" – MAGISTRATE #5** |
| **VERSUS** | * | |
| | * | **JUDGE AFRICK** |
| **ADRIATIC MARINE, LLC** | * | |
| | * | **MAG. JUDGE NORTH** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND OPINIONS OF D.J. GREEN**</u>

**MAY IT PLEASE THE COURT:**

Defendant, Adriatic Marine, LLC ("Adriatic Marine") seeks an Order excluding the trial testimony of the alleged liability expert, D.J. Green ("Green") for Plaintiff, Daniel Beech.

Plaintiff intends to call Green as a witness at trial. Green has issued an expert report, discussed in further detail below, and apparently intends to offer four (4) opinions during that testimony. Yet, Green's opinions will not assist the jury, the trier of fact, in understanding the relevant facts and issues surrounding this straight-forward personal injury claim. The jury is more than capable of understanding the "ins and outs" of how Plaintiff's alleged accident took place without expert testimony. The issues surrounding Plaintiff's alleged accident do not require "scientific, technical, or specialized knowledge."

**PLAINTIFF'S ALLEGED ACCIDENT**

This is a Jones Act seaman personal injury case. On October 15, 2019, Plaintiff, who was working as a second unlicensed engineer, allegedly suffered an injury to his back while participating in a U.S. Coast Guard inspection aboard the M/V CARIBBEAN, a vessel owned and operated by Adriatic Marine. Plaintiff claims that he injured his thoracic and lumbar spine while attempting to loosen a cap from the emergency fuel shutdown valve located on the starboard side

of the deck of the CARIBBEAN. Specifically, Plaintiff alleged that he attempted to loosen the cap by utilizing a T-bar wrench; however, because the valve's cap was allegedly "super tight," he "used as much force as [he] could," thereby resulting in an alleged twisting injury to his back.[1] As a result of the incident, Plaintiff filed suit against Adriatic and has made claims for, *inter alia*, past and future wage loss.[2] A jury trial is scheduled to begin on February 1, 2021.

## GREEN'S EXPERT REPORT

Green provided an expert report dated October 1, 2020.[3] Green provided a summary of the 'Incident' which appears to be based entirely upon Plaintiff's deposition testimony. Specifically, Green provides the following:

> On or about October 15, 2019, Daniel Beech working on various requests from the Coast Guard Inspector for the annual inspection of the OSV CARIBBEAN. Mr. Beech states that the Coast Guard Inspector, during a fire drill in the engine room, requested Sean McNamara, SSE Engineer go shut down the emergency fuel shutdown. "And immediately they asked us to – or asked him (Sean McNamara), run up and shut down the emergency fuel shutdown. And he (Sean McNamara) told me (Daniel Beech) he (Sean McNamara) wasn't aware of where it was at, so I went up to shut it down." (Daniel Ray Beech Deposition pgs. 81 – 82)
>
> Mr. Beech went up on the port side of the OSV CARIBBEAN to shut down the emergency fuel valve. When Daniel Beech returned to the engine room, the Coast Guard Inspector stated that did not shut off the engine. Mr. Beech stated he shut it off on the port side, and then he was told by the Coast Guard to go to the starboard side to shutdown the emergency fuel valve. Mr. Beech returned back on deck, picked up a tool and went to the starboard side. He located the emergency fuel valve and tried to open the cap. Daniel Beech found it difficult to open. He applied as much force as he could, and as the valve turned, he felt a ripping in his back, which brought him to his knees where he stayed for a few minutes. Mr. Beech got to his feet and headed back to the engine room, and he ran into DJ Jones, Watch Officer. Daniel Beech informed DJ Jones that he had hurt himself. DJ Jones asked whether I could stick it out through the Coast Guard inspection, and I said, "Yeah, I'll give it a shot."[4]

---

[1]  Exhibit 1, Deposition of Daniel Beech, at p. 88:9-14.
[2]  R. Doc. 1, at p. 3, ¶ VII.
[3]  Exhibit 2, Green's Expert Report.
[4]  *Id*., at p. 4.

Green then offers four opinions:

4.1 Subject to receiving additional information or records, it is my opinion that the cause of this incident was the failure of the defendant to provide Mr. Daniel Beech with a safe place of employment free from hazards. Mr. Beech was following the directions given to him by a Coast Guard Inspector to shut down the emergency fuel shutoff valve during a fire drill being conducted as part of an on-going Coast Guard inspection. After first closing the portside valve, he was instructed to shut the starboard fuel shutoff valve. Mr. Beech felt it was an exigent situation and over exerted himself in his attempt to open the cap to the fuel shutoff valve causing injury to his person. It is obvious that the cap to the starboard side emergency fuel cutoff valve had not been opened or serviced for some period of time and was seized in place, which, in my opinion, rendered the vessel not fit for route or service (unseaworthy).

4.2 It is my opinion that the incident described in this case was preventable and could have been avoided had the Defendant had a policy or procedure to maintain reasonable access to the starboard emergency fuel shutoff valve. The purpose of the emergency fuel shutoff valve is to cutoff fuel to, in this case, the starboard main engine in the event of an emergency, i.e. fire. Having served as a Coast Guard Inspector during my Coast Guard career, I often would hold fire drills aboard vessels I inspected. Particular importance to the Coast Guard is to evaluate the performance of the crew during various drills conducted during an inspection. Mr. Beech was expected to react quickly (smartly), which he did.

4.3 It is my opinion, based on the testimony of Mr. Beech that he conducted himself as was expected of him by the Coast Guard Inspector, in a smartly manner, and without delay. As discussed above, Coast Guard inspections are conducted to evaluate not only the condition of the vessel, but also the performance of its crewmembers in an emergency.

4.4 It is my opinion that the actions of Mr. Beech did not cause or contribute to the cause or causes of this incident.

Adriatic Marine addresses each opinion in turn below.

## LAW AND ARGUMENT

Under Rule 702 of the Federal Rules of Evidence,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"[F]or expert opinion to be admissible, the expert must be qualified and his opinion must assist the trier of fact to understand the evidence or determine a fact at issue." *Maddox v. Rockin D Marine Servs., LLC*, C.A. No. 15-6985, 2017 U.S. Dist. LEXIS 59, at *3 (E.D. La. 2017) (Vance, J.). "Expert testimony is superfluous if the facts can be accurately and intelligently described to the jury, and the jury is as capable of comprehending them and drawing conclusions from them as purportedly specialized experts." *Id*. (citing *Salem v. United States Lines Co*., 370 U.S. 31, 36, 82 S. Ct. 1119, 8 L. Ed. 2d 313 (1962)).

**Opinion 4.1**

Green opines that "the cause of this incident was the failure of the defendant to provide Mr. Daniel Beech with a safe place of employment free from hazards." Green also improperly opines that "[i]t is obvious that the cap to the starboard side emergency fuel cutoff valve had not been opened or serviced for some period of time and was seized in place, which, in my opinion, rendered the vessel not fit for route or service (unseaworthy)." Green reaches this opinion despite having never inspected the CARIBBEAN and never seeing the cap in question, including in its alleged condition at the time of Plaintiff's alleged accident. This alone raises questions as to whether Opinion 4.1 is based on sufficient facts and knowledge. Regardless, there is no evidence

that the cap had "obviously" "not been opened or serviced for some period of time." Green appears to be offering this comment based on nothing but his own unsupported belief.[5]

Green's opinion that Adriatic Marine failed to provide Plaintiff "with a safe place of employment free from hazards" is also not an opinion requiring "scientific, technical or other specialized knowledge." There is no expertise required to understand how Plaintiff's alleged accident occurred: He testified that he overexerted himself while using a T-bar to open the cap to the emergency fuel shutdown on the starboard side of the back deck of the CARIBBEAN.

Below is a picture of the area in question:



The cap is circled in blue. There is no special expertise required to analyze how Plaintiff allegedly was hurt in trying to open the cap in question. Plaintiff can explain how he tried to open the cap, and the jury can take that testimony to determine whether Plaintiff or Adriatic Marine was at fault.

---

[5] Plaintiff testified that he did not know the last time that the cap was opened and that he did not know who would have been the last person to touch it. Exhibit 1, at 96:21 - 98:1. How Green can then conclude that the cap had "obviously" "not been opened or serviced for some period of time" is entirely unclear.

As noted by Judge Vance when she excluded similar opinions offered by Green in *Maddox v. Rockin D Marine Services, LLC*, "[i]t is well within the competence of the average juror to assess whether this was not a reasonably safe maneuver." C.A. No. 15-6985, 2017 U.S. Dist. LEXIS 59, at *3 (E.D. La. Jan. 3, 2017) (Vance, J.). "There is nothing uniquely maritime or technical about the task at issue that requires expert assistance." *Id*. The same is true here. There is nothing uniquely maritime or technical in understanding that Plaintiff allegedly was injured while using a T-bar to open the above cap.

Green's opinion appears to be little more than a statement of his appreciation of the "facts" along with a boiler-plate conclusion that Adriatic Marine failed to provide Plaintiff "with a safe place of employment free from hazards." Putting aside the fact that, as a matter of law, a vessel owner does not have to provide a vessel completely free from hazards, whatever this overly broad statement about a "safe place of employment" is meant to convey is not something that requires an expert to offer in testimony. The jury can quite clearly determine whether -- considering all the evidence presented and not simply Green's appreciation of the "facts" -- the cap in question was a hazard and, more specifically, whether Adriatic Marine provided him a reasonably safe place to work.

The same is true for Green's improper conclusions as to "the cause" of the alleged accident and the alleged "unseaworthiness" of the CARIBBEAN, which are legal conclusions that are improper. In fact, Green has previously been precluded from offering nearly identical statements by Judge Engelhardt in *King v. RC Offshore, L.L.C*., C.A. No. 14-2404, 2016 U.S. Dist. LEXIS 20046, at *4 (E.D. La. Feb. 12 2016):

> Clearly, statements in these opinions that the failure of the vessel to maintain its position during this work 'was the direct cause of this incident', that 'the operator of the CHRIS R was negligent ...', and that 'there is no evidence or information that the actions or omissions [of Plaintiff] either caused or contributed to this incident'

are the very questions that the jury will consider, and the very questions that will appear on the jury interrogatory form. Contrary evidence exists. Though Green's opinions may be consistent with what the jury ultimately decides, he cannot, wearing the cloak of authority of a court-accepted expert, answer the jury verdict form questions as his ultimate opinions. In other words, Green cannot, in essence, tell the jury (1) the cause (and whose fault) of the incident, (2) the Defendant was negligent, and (3) the Plaintiff's own alleged negligence did not contribute. These considerations are squarely within the jury's province, and expert testimony such as Green's is not admissible.

Moreover, by using the word "unseaworthy," Green is quite clearly trying to offer a legal conclusion, going so far as to use the exact language that the Court will provide to the jury in its instructions. It is not within Green's province to reach legal conclusions. *See, e.g., Lee v. Cent. Gulf Towing, L.L.C.,* C.A. No. 04-1497, 2005 U.S. Dist. LEXIS 48616, at *15 (E.D. La. 2005) (striking proposed testimony as to the unseaworthiness of a vessel).

Opinion 4.1 should be stricken, and Green should not be permitted to offer it at trial.

**Opinion 4.2**

Opinion 4.2 is equally suspect and unnecessary. Green opines that "the incident described in this case was preventable and could have been avoided had the Defendant had a policy or procedure to maintain reasonable access to the starboard emergency fuel shutoff valve." Again, putting aside the fact that Green never inspected the CARIBBEAN, this is a similarly unhelpful opinion.

First, Green does not opine as to how a "policy or procedure to maintain reasonable access to the starboard emergency fuel shutoff valve" could have prevented this alleged accident. It is not clear what Green means by "reasonable access" since the cap in question is located in a readily-accessible location on the back deck of the CARIBBEAN. Green notably does not explain what policy or procedure Adriatic Marine lacked or how that alleged policy or procedure would have prevented Plaintiff's alleged accident. Rather, this appears to be another attempt by Green to use

a "buzzword phrase" like "lack of policy or procedure" to ascribe fault to Adriatic Marine even though there is no evidence that Plaintiff's alleged accident occurred because of some "lack of policy or procedure." In *Maddox*, Judge Vance excluded Green from offering a similar opinion on policies and procedures, noting "[f]urther, a review of Green's expert report reveals that it is bereft of the application of any scientific or technical knowledge. He opines that defendants failed to provide adequate instructions and procedures, but he does not identify what those procedures should have been." 2017 U.S. Dist. LEXIS 59, at *3-4.  The same is true here.

In fact, like Opinion 4.1, there is no specialized knowledge or technical expertise required to determine whether or not a policy or procedure applied to and/or would have prevented Plaintiff's alleged accident.  Instead, this is a common-sense issue that the jury can easily understand when presented the facts.  It does not need Green explaining to them how some unspecific policy or procedure "could have avoided" Plaintiff's alleged accident.  Courts have routinely precluded experts from testifying about a safety policy or procedure when the jury is capable of understanding relevant safety policies and regulations. *See, e.g., Kibodeaux v. Hercules Offshore Servs., LLC,* C.A. No. 15-1229, 2016 U.S. Dist. LEXIS 199517, at*12-13 (E.D. La. Feb. 3, 2016) (Barbier, J.).

Opinion 4.2 should be stricken, and Green should not be permitted to offer it at trial.

**Opinion 4.3**

Opinion 4.3 does not require specialized or technical expertise.

Instead, the jury can quite easily consider all the facts and determine whether or not Plaintiff was negligent in rushing to conduct this task as quickly as possible.  Plaintiff admitted

during his deposition that he no one rushed him to complete this task as quickly as possible; he only felt compelled to do so personally.[6]

Again, whether Plaintiff acted negligent does not require expert testimony to determine. The jury can rely upon its common sense to draw its conclusion. *See, e.g.*, *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990).

Opinion 4.3 should be stricken, and Green should not be permitted to offer it at trial.

**Opinion 4.4**

Lastly, Opinion 4.4, which states that "the actions of Mr. Beech did not cause or contribute to the cause or causes of this incident," is improper.

As noted above, Judge Engelhardt excluded an identical opinion offered by Green in the *King* case: "In other words, Green cannot, in essence, tell the jury … (3) the Plaintiff's own alleged negligence did not contribute. These considerations are squarely within the jury's province, and expert testimony such as Green's is not admissible." *King*, 2016 U.S. Dist. LEXIS 20046, at *4.

Opinion 4.4 should be stricken, and Green should not be permitted to offer it at trial.

## CONCLUSION

For the above reasons, Adriatic Marine respectfully requests that the Court exclude Green's testimony.

---

[6] Exhibit 1, at 93:14 - 96:13.

Respectfully submitted:

*/s/ Hansford P. Wogan*
LANCE M. SANNINO (#29409)
WILLIAM C. BALDWIN (#31613)
HANSFORD P. WOGAN (#34825)
SARA B. KUEBEL (#38305)
Jones Walker LLP
201 St. Charles Avenue, Suite 4800
New Orleans, LA 70170
Telephone: (504) 582-8000
Fax: (504) 582-8164
lsannino@joneswalker.com
wbaldwin@joneswalker.com
fwogan@joneswalker.com
skuebel@joneswalker.com

***Attorneys for Adriatic Marine, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's ECF filing system and/or US Mail, or email on this 1st day of December, 2020.

*/s/ Hansford P. Wogan*
HANSFORD P. WOGAN