UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DANIEL BEECH**                                                                       **CIVIL ACTION**

**VERSUS**                                                                               **No. 20-1178**

**ADRIATIC MARINE, L.L.C.**                                     **SECTION I**

### ORDER AND REASONS

Before the Court is defendant Adriatic Marine, L.L.C.'s ("Adriatic") motion[1] *in limine* to exclude the testimony of plaintiff Daniel Beech's ("Beech") proposed liability expert, D.J. Green ("Green"), pursuant to Federal Rule of Evidence 702 and *Daubert*. Beech opposes[2] the motion and Adriatic has submitted a reply[3] in support of the motion. For the reasons that follow, Adriatic's motion is granted.

### I.    BACKGROUND AND FACTS

This case arises from injuries Beech allegedly suffered on October 15, 2019.[4] Beech alleges that, while employed by Adriatic aboard the M/V CARIBBEAN (the "Caribbean") as an unlicensed engineer,[5] he suffered "serious painful injuries to his back and other parts of his body."[6] He explains that, while the Caribbean was undergoing Coast Guard inspections,[7] he "was ordered to turn off the starboard side emergency fuel shutdown valve."[8] Beech found the valve "stuck and very hard to

---

[1] R. Doc. No. 19.
[2] R. Doc. No. 23.
[3] R. Doc. No. 32.
[4] R. Doc. No. 1, at 2 ¶ 5.
[5] R. Doc. No. 23, at 1.
[6] *Id.* at 2 ¶ 5.
[7] R. Doc. No. 23, at 1.
[8] *Id.* at 2.

1

turn, as if it had not been moved or worked in a very long time."[9]  He claims that he was eventually able to turn the valve using a T-bar wrench, but felt a sensation akin to "paper ripping" in his back.[10]  He reported the injury but returned to work before leaving the Caribbean almost two weeks later.[11]

Beech intends to call Green, a retired Coast Guard Commander, to "assist the triers of fact in analyzing marine safety procedures, and evaluating how the circumstances which led to [Beech's] injury were incompatible with those procedures."[12]

In his report, Green offers the following opinions:

> 1.      Subject to reviewing additional information or records, it is my opinion that the cause of this incident was the failure of the defendant to provide [Beech] with a safe place of employment free from hazards. [Beech] was following the directions given to him by a Coast Guard Inspector to shut down the emergency fuel shutoff valve during a fire drill being conducted as part of an on-going Coast Guard inspection. After first closing the portside valve, he was instructed to shut the starboard fuel shutoff valve. [Beech] felt it was an exigent situation and over exerted [sic] himself in his attempt to open the cap to the fuel shutoff valve causing injury to his person.  It is obvious that the cap to the starboard side emergency fuel cutoff valve had not been opened or serviced for some period of time and was seized in place, which, in my opinion, rendered the vessel not fit for route or service (unseaworthy).
> 2.      It is my opinion that the incident described in this case was preventable and could have been avoided had the Defendant had a policy or procedure to maintain reasonable access to the starboard emergency fuel shutoff valve.  The purpose of the emergency fuel shutoff valve is to cutoff [sic] fuel to, in this case, the starboard main engine in the event of an emergency, i.e. fire.  Having served as a Coast Guard Inspector during my Coast Guard career, I often would hold fire drills aboard vessels I inspected.  Particular importance [sic] to the Coast Guard is to

---

[9] *Id.*
[10] *Id.* at 2–3 (citing R. Doc. No. 23-1, at 3); R. Doc. No. 19-1, at 2 (citing R. Doc. No. 19-2, at 9).
[11] R. Doc. No. 23, at 3; R. Doc. No. 23-1, at 3.
[12] R. Doc. No. 23, at 1.

> evaluate the performance of the crew during various drills conducted during an inspection. [Beech] was expected to react quickly (smartly), which he did.
> 3. It is my opinion, based on the testimony of [Beech] that he conducted himself as was expected of him by the Coast Guard Inspector, in a smartly manner, and without delay. As discussed above, Coast Guard inspections are conducted to evaluate not only the condition of the vessel, but also the performance of its crewmembers in an emergency.
> 4. It is my opinion that the actions of [Beech] did not cause or contribute to the cause or causes of this incident.[13]

Green's report lists a number of pieces of "attorney supplied information" as the basis of his opinions and adds that he has "reviewed safety procedures, federal and International rules and regulations and drawn on personal experience and training, all for the purpose of rendering opinions as to the cause of this incident."[14] However, Green's opinions themselves reference only Beech's testimony and Green's expertise as bases for his conclusions.[15]

## II.  LAW AND ARGUMENT

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides that a witness who is "qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if" (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the

---

[13] R. Doc. No. 19-3, at 5.
[14] *Id.* at 3.
[15] *See id.* at 4–5.

3

testimony is based upon sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods; and" (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

"To qualify as an expert, 'the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)) (internal alterations omitted). "Additionally, Rule 702 states that an expert may be qualified based on 'knowledge, skill, experience, training, or education[.]'" *Id.* at 524; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (discussing witnesses whose expertise is based purely on experience).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147. When expert testimony is challenged under Rule 702 and *Daubert*, the burden rests with the party seeking to present the testimony. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique can be or has been tested, (2) whether the

technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *See Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (emphasis omitted) (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

Proposed expert testimony must be relevant "not simply in the [way] all testimony must be relevant [pursuant to Rule 401], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

> There is no more certain test for determining when experts may be used than the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*Vogler v. Blackmore*, 352 F.3d 150, 155 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules). In other words, expert testimony

is unnecessary where a jury can "adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). And, even if they satisfy *Daubert*, "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)).

Adriatic argues that Green's first opinion—that the cause of the incident was its failure to provide Beech with a safe place of employment free from hazards like the stuck valve cap and that "[i]t is obvious that the cap to the starboard side . . . valve had not been opened or serviced for some period of time . . . render[ing] the vessel . . . unseaworthy"—is improper because it (1) appears to be baseless, (2) is not "an opinion requiring 'scientific, technical, or other specialized knowledge,'"[16] and (3) offers legal conclusions.[17] Adriatic notes that Green "never inspected the [Caribbean] and never [saw] the cap in question."[18] Further, since "[p]laintiff testified that he did not know the last time the cap was opened and that he did not know who would have been the last person to touch it," the basis for Green's conclusion that the cap had not been opened for some time is "entirely unclear."[19] Adriatic concludes that "Green appears to be offering this comment based on nothing but his own unsupported belief."[20]

---

[16] R. Doc. No. 14-1, at 4–5.
[17] *Id.* at 6.
[18] *Id.* at 4.
[19] *Id.* at 5 n.5.
[20] *Id.* at 5.

6

Adriatic also argues that Green's opinion that Adriatic Marine failed to provide a safe workplace is unnecessary because "[t]here is no expertise required to understand how [Beech]'s alleged accident occurred."[21] At trial, Beech "can explain how he tried to open the cap, and the jury can [use] that testimony to determine whether [Beech] or [Adriatic] was at fault."[22] Because "[i]t is well within the competence of the average juror to assess whether this was not a reasonably safe maneuver . . . . There is nothing uniquely maritime or technical about the task at issue that requires expert assistance."[23]

Finally, Adriatic notes that Green's statements about "the cause" of the accident being Adriatic's failure to provide "a safe place of employment free from hazards" and that the vessel was unseaworthy appear to boiler-plate legal conclusions.[24]

Adriatic argues that Green's second opinion—that the incident could have been avoided if Adriatic "had a policy or procedure to maintain reasonable access to the starboard emergency fuel shutoff valve"—is similarly (1) baseless and (2) unnecessary to aid the jury with a commonsense inquiry.[25] It is baseless because Green neither explains how he reached it nor "how a 'policy or procedure to maintain

---

[21] *Id.*
[22] *Id.*
[23] *Id.* at 6 (quoting *Maddox v. Rockin D Marine Servs., LLC*, No. 15-6985, 2017 WL 24790, at *2 (E.D. La. Jan. 3, 2017) (Vance, J.)).
[24] *Id.* Adriatic also notes that Green has previously been prevented from offering similar statements that "answer[ed] the jury verdict form questions as his ultimate opinions." *Id.* at 6–7 (quoting *King v. RC Offshore, L.L.C.*, No. 14-2404, 2016 WL 558369, at *2 (E.D. La. Feb. 12, 2016) (Engelhardt, J.)).
[25] *Id.* at 7–8.

7

reasonable access' . . . could have prevented" the accident, which does not appear to have anything to do with the valve's accessibility.[26] And it is unnecessary because "there is no specialized knowledge or technical expertise required to determine whether or not a policy applied."[27]

Adriatic argues that Green's third opinion—that Beech's conduct was appropriate for a Coast Guard inspection—should be excluded because it "does not require specialized or technical expertise."[28] Noting that Beech testified that "no one rushed him to complete this task as quickly as possible; he only felt compelled to do so personally," Adriatic concludes that a jury can reasonably decide whether Beech acted negligently.[29]

Finally, Adriatic argues that Green's fourth opinion—that Beech was not contributorily negligent—is an impermissible legal conclusion.[30]

In response, Beech argues that Green's opinions are not baseless because he "not only reviewed [Beech's testimony] but also reviewed the portions of the Adriatic safety manual that [were] produced."[31] He adds that "[a]fter [Green] issued his report, Adriatic produced various maintenance schedules in response to" a second request for documents, and that these documents were provided to Green.[32] These

---

[26] *Id.* at 7 (noting that the cap "is located in a [readily accessible] location on the back deck" of the vessel).
[27] *Id.* at 8.
[28] *Id.*
[29] *Id.* at 9 (citing R. Doc. No. 19-2, at 10).
[30] *Id.* at 10.
[31] R. Doc. No. 23, at 8.
[32] *Id.*

documents, Beech claims, "show that a starboard fuel valve . . . was stuck for months, and not rectified either before or after" the incident.[33]

Beech argues that the first opinion—which he describes as "identif[ying] the hazard which rendered the vessel unsafe, namely the starboard emergency fuel shutdown valve"—is based on Green's "extensive knowledge, skill, and training and industry safety standards."[34] He adds that "the vessel condition reports signed by the captain," produced after Green's report was issued, support the opinion.[35]

Beech argues that the second opinion—which he summarizes as "this incident could have been prevented had Adriatic had proper policies in place to maintain reasonable access to this valve"—is admissible because it is based on Green's "knowledge, experience, and the discovery which had been conducted at the time his report was due."[36] Beech argues that this will be useful to the jury because, as it is unlikely that jurors have participated in a Coast Guard inspection, Green can aid them in understanding the importance of opening the emergency valves quickly during such a drill.[37] Beech adds, without explanation, that "the fact that it was so hard to open the valve at issue rendered the vessel unsafe is something that [Green] will be able to better explain to the jury, rather than any lay person."[38] He adds that

---

[33] *Id.* at 9.
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.* at 9–10.
[38] *Id.* at 10.

9

Green can use his knowledge of industry standards and expertise to aid the jury, and that he "does not merely make conclusions based on common sense."[39]

Beech argues that the third and fourth opinions—relating to Beech's role in the incident—are proper because they rely on Green's "experience as a Coast Guard certified vessel safety instructor" and "will certainly assist the jury as it seeks to determine fault in this case."[40]

Beech also offers a number of rebuttals to Adriatic's arguments. While he "agrees that [Green] cannot testify to the ultimate legal conclusions which the jury would render in this case," he argues, citing no case law, that "stating that certain work practices were unsafe, or even rendered a vessel unsafe, are not legal conclusions." He apparently concedes, however, that it will be "up to [the jury] to determine" whether the Caribbean was "unseaworthy."[41]

Given his earlier statements that Green's report is based on his "extensive knowledge, skill, and training and industry standards," Beech notes that: "Adriatic faults [Green] for relying upon [Beech's] recitation of facts as to how he was injured . . . in rendering his opinions . . . . It also somehow faults [Green] for not being present or seeing the incident, so as to render his opinions wholly unreliable."[42] Although Beech concedes that "this was an unwitnessed workplace injury" and "[n]o video has been produced of [Beech's] turning of the valve in question,"[43] he argues that "the

---

[39] *Id.*
[40] *Id.* at 11.
[41] *Id.* at 12.
[42] *Id.* at 10.
[43] *Id.*

10

facts are in dispute" and that, were they not, "there likely would be no need for expert testimony."[44] Beech also argues that Green's absence from the accident site does not render his opinions unreliable or irrelevant.[45]

Finally, Beech objects to Adriatic's "reliance on other cases" in which Green was excluded from offering testimony,[46] arguing that the use of "orders rendered in other cases . . . . only serves to prejudice [Green]."[47]

In reply, Adriatic notes that Beech's opposition "does little to actually explain why [Green's] opinions possess the necessary 'scientific, technical or other specialized knowledge' to be presented to the jury."[48] It argues that Green's assistance is unnecessary because "the jury can easily understand" how the alleged accident occurred.[49]

In response to Beech's argument that Green relied on his expertise to form his opinions, Adriatic questions the notion that maritime expertise is necessary to reach the conclusion that "it should not take [enough force to injure a back] to open a" properly maintained valve.[50] And in response to Beech's argument that the maintenance records produced after the report support Green's conclusion that it had

---

[44] *Id.*
[45] *Id.* at 11.
[46] *Id.* at 12.
[47] *Id.* (citing *McDowell v. Atl. Sounding Co.*, No. 11-1879, 2012 WL 1656262, at *3 n.6). The Court assumes that Beech means the use of such opinions prejudices *him* as the party seeking to call Green.
[48] R. Doc. No. 32, at 1.
[49] *Id.*
[50] *Id.* at 1–2. The Court understands that there is a genuine issue of fact as to whether the valve at issue was properly maintained.

11

not been properly maintained, Adriatic points out that the relevant reference is to a different starboard side valve.[51]

In response to Beech's argument that Green will be able to discuss industry standards for maintenance standards, Adriatic notes that Green offered no opinion to this effect in his report.[52] It concludes that, as a result, he cannot testify on the matter at trial. Finally, Adriatic rejects Beech's argument that its use of other cases in which Green was excluded is prejudicial, arguing that the reasons for exclusion are nearly identical.[53]

### III. ANALYSIS

As an initial matter: Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(i), "[u]nless otherwise stipulated or ordered by the court, [a party's expert disclosure] must be accompanied by a written report . . . . [containing, among other things] a complete statement of all opinions the witness will express and the basis and reason for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support them." Fed. R. Civ. Proc. 26(a)(2)(B)(i-iii). Opinions not included in a required report may not be offered. *See, e.g., Davis v. Signal Int'l, LLC*, No. 08-1220, 2015 WL 65278, at *3 (E.D. La. Jan. 5, 2016) (Morgan, J.) (excluding an opinion "because it was not included in [the expert's] report" as required by Rule 26); *see also S. Snow Mfg. v. Snowizard Holdings, Inc.*, No. 06-9170, 2013 WL 161189, at *2 (E.D. La. Jan. 15, 2013) (Brown, J.) ("District

---

[51] *Id.* at 2 n.1. The Court notes that Beech has not sought leave to file a surreply.
[52] *Id.* at 3.
[53] *Id.*

courts have the discretion to exclude expert . . . testimony when a party does not comply with [Rule 26(a)(2)'s disclosure requirements] in preparing an expert report[.]") (citing *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012)). Because Beech has not filed a motion or otherwise indicated that he seeks to expand the scope of Green's proposed testimony (and Green has not attempted to testify), the only opinions Green could conceivably testify to at this time are those included in his report. Therefore, absent a supplemental expert report, which has not been produced, any opinion regarding "relevant industry standards on maintenance schedules"[54] cannot be offered.

### *Opinion One: Unsafe Place of Employment*

Green's first opinion offers the sweeping conclusion that "the cause of the incident was the failure of the defendant to provide . . . a safe place of employment."[55] Taken at that level of generality, this is a legal conclusion that purports to answer, essentially, "the very questions that the jury will consider." *King*, 2016 WL 558369 at *2.[56] Green may not offer testimony to this effect.

The first opinion also states that "it is obvious that the cap to the starboard side emergency fuel cutoff valve" had not been opened in some time. Beech's

---

[54] R. Doc. No. 23, at 10.
[55] R. Doc. No. 19-3, at 5.
[56] Beech is, of course correct that the Court may not base its decision to exclude Green's testimony on the fact that he has previously been precluded from testifying for these reasons. However, his charge that it is inappropriate to look to decisions excluding Green's testimony for their *precedential or persuasive value* (*i.e.*, to find support for the fact that an opinion of a certain type offers a legal conclusion or is based in common sense) is misguided. To be clear, the Court is excluding Green from testifying as to these opinions because they are impermissible, not because he has previously attempted to offer impermissible testimony.

opposition argues that this opinion is the result of Green's expertise and knowledge of industry standards—though he offers little explanation why. But what expertise could Green have that would be necessary to reach this opinion? While Beech argues that subsequently produced maintenance logs bear this opinion out,[57] those logs cannot conceivably have been the basis for an opinion Green offered before they were produced. And while Beech's opposition to the motion makes general reference to "portions of the Adriatic safety manual that was produced,"[58] which Green reviewed, the Court has no way of knowing how, if at all, this forms the basis of Green's first opinion.

Green's proposed testimony amounts to an opinion that when a valve is so stuck that a seaman injures himself turning it, it must not have been serviced in months. Beech, who has the burden to demonstrate admissibility, has not explained how this task is "uniquely maritime or technical." *See Maddox*, 2017 WL 24790, at *2. If this conclusion is based on anything, then, it is based on common sense. While the average juror may not have turned a fuel valve, they have almost certainly tried opening a pickle jar from the back of the cupboard and failed. Green's opinion is unnecessary. *See Peters*, 898 F.2d at 450; *Vogler*, 352 F.3d at 155 n.5.

<u>*Opinion Two: Failure to Maintain Reasonable Access to Valve*</u>

---

[57] Because Green has not offered any independent opinion as to the significance of the logs, the Court need not address Adriatic's argument that he is misreading them—or whether a jury would need expert assistance to interpret them. That fact notwithstanding, nothing precludes Beech from arguing that Adriatic's maintenance schedule was lacking.

[58] R. Doc. No. 23, at 8.

Green's second opinion concludes that the "incident was preventable and could have been avoided had the Defendant had a policy or procedure to maintain reasonable access to the . . . valve."[59] This opinion is offered without any explanation of its basis or even how a policy regarding reasonable access could conceivably prevent such injuries. Tellingly, Beech's opposition to the motion is silent as to the relevance of such a policy—resting instead on Green's familiarity with drills and his ability to explain the significance of a stuck valve to the jury. Neither of these arguments addresses the main thrust of the opinion, which is that Adriatic could have avoided this accident by having a policy or procedure ensuring reasonable access to the valve. It is Beech's burden to demonstrate that this opinion is both reliable and relevant. He has demonstrated neither.

*Opinion Three: Beech Acted Appropriately*

Green's third opinion is that, based on Beech's testimony, he conducted himself in a manner that was appropriate for a seaman during a Coast Guard inspection. The Court does not doubt that Green is qualified to educate the jury with respect to expectations of a seaman's role during an inspection. However, Beech does not explain how this testimony is relevant, beyond the fact that it "will certainly assist the jury as it seeks to determine fault in this case" and that "[k]nowing whether the plaintiff was following the proper protocols is not irrelevant in a case where no one witnessed an accident in which a person was injured."[60] Should Adriatic argue at trial that Beech did not comport with expectations for such a drill, or if Beech argues

---

[59] R. Doc. No. 19-3, at 5.
[60] R. Doc. No. 23, at 11.

15

that satisfying industry expectations for a drill is of legal significance, he may move to have Green testify on the issue. As it stands, the Court finds that, based upon the showing made, the testimony is excluded.

### *Opinion Four: Beech did not Cause the Incident*

Green's fourth opinion is that "Beech did not cause or contribute to the cause or causes of this accident."[61] This opinion is, among other things, a legal conclusion. As Beech acknowledges, Green "cannot testify to the ultimate legal conclusions which the jury would render in this case."[62] Moreover, Beech concedes that Green "may not be able to opine on whether [Green] himself was negligent in his actions."[63] On this point, Beech is correct. Green's opinion amounts to a statement that Beech was not contributorily negligent. This is inadmissible. *See, e.g., Jacobs v. N. King Shipping Co.*, No. 97-772, 1998 WL 28234, at *2 (E.D. La. Jan. 23, 1998) (Duval, J.) (stating that "blanket legal conclusions" such as whether conduct was negligent "are an inappropriate subject for expert testimony"); *see also Richardson v. SEACOR Lifeboats, LLC*, No. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015) (Morgan, J.) (cautioning plaintiff against offering expert testimony about "the legal cause of the accident because [it is a] legal conclusion[] for the fact finder to make").

### IV.   CONCLUSION

The opinions described in Green's report are inadmissible. Accordingly,

---

[61] R. Doc. No. 19-3, at 5.
[62] R. Doc. No. 23, at 12.
[63] *Id. a*t 11.

16

**IT IS ORDERED** that the motion to exclude Green's testimony is **GRANTED**. Beech may not offer Green as an expert at trial, except on further motion at trial as set forth herein.

New Orleans, Louisiana, January 5, 2021

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**